NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO D.W.

No. 1 CA-JV 23-0199
FILED 03-26-2024

Appeal from the Superior Court in Maricopa County
No. JD40517
The Honorable Christopher Whitten, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Phoenix
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Anni Hill Foster and Judge Brian Y. Furuya joined.

---

H O W E, Judge:

¶1        Lachelle P. ("Mother") appeals the juvenile court's order terminating her parental rights to her son, D.W., born in July 2022, on the grounds of chronic substance abuse, out-of-home placement for six months, and prior termination of parental rights. We affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Mother and Devin W. ("Father") share six children, including D.W.[1] D.W. is an Indian child under the Indian Child Welfare Act ("ICWA") because he is eligible to enroll as a member of the Navajo Nation ("Tribe"). *See* 25 U.S.C. § 1903(4) (defining "Indian child").

¶3        In January 2021, the Department of Child Safety received a report that Mother and Father's oldest child found Mother and Father "semi[-]conscious" in their bedroom at 11:30 a.m. Mother requested medical assistance and the child called the police, later informing them that Mother had been using "M30 pills," which contained fentanyl and suboxone. After the Department's initial plan of implementing an in-home safety plan failed, it removed all the children from home. The Department petitioned for dependency based on Mother's neglect.

¶4        The Department offered Mother family preservation services, parenting sessions, substance-abuse testing, substance-abuse assessment and treatment, and visitation. She initially engaged in the services provided, but a few months later stopped engaging in substance-abuse testing and relapsed. In July 2022, D.W. was born substance-exposed and suffered withdrawal symptoms. The Department placed him with his paternal grandmother, who was also the placement for his older siblings.

---

[1]        Father is not a party to this appeal; his parental rights were terminated.

That same month, the Department petitioned to have D.W. declared dependent as to Mother because of Mother's abuse and neglect. The juvenile court found D.W. dependent and approved family reunification as the case plan.

¶5        Regarding D.W.'s dependency, the Department again referred Mother for an outpatient substance-abuse treatment program ("Program"), but she did not consistently participate and was eventually discharged from the Program for using fentanyl. Based on the Program's recommendation, the Department offered her an inpatient substance-abuse treatment program. Mother was not willing to attend. Similarly, she did not visit D.W. or participate in substance-abuse testing. Finally, the Department was unsuccessful in contacting her by phone, email, and mail to establish services.

¶6        In January 2023, the juvenile court terminated Mother's parental rights as to her other five children on the grounds of chronic substance abuse and out-of-home placement for six months. In June 2023, the Department petitioned to terminate Mother's parental rights as to D.W., alleging chronic substance abuse, out-of-home placement for six months, and prior termination of parental rights. At the termination hearing, Mother testified that she participated in the services that the Department provided but stopped participating in those services after her relapse around May 2022. She also testified that she was arrested in 2022 and 2023 on narcotic possession-related charges and that she was participating in intensive inpatient treatment at a substance-abuse treatment center as a condition of her release.

¶7        The Department's caseworker testified that Mother's engagement in the provided services was inconsistent and that providing further services would be futile. She also testified that D.W. was doing well in his placement with his grandmother, that he was bonded with her, and that the placement would provide him with stability and permanency. Finally, she testified that termination of Mother's parental rights was in D.W.'s best interests. The Tribe's social worker, who was also an ICWA specialist, testified that the Department had made active efforts to prevent the breakup of the family and that Mother's custody of D.W. was likely to cause D.W. serious emotional or physical damage. She also testified that the placement would allow D.W. to maintain a connection to the Tribe's customs and cultural history because his grandmother was willing to allow him to have contact with his relatives, who are Tribe members.

**¶8**          The juvenile court found that the Department had proved all three grounds for termination of Mother's parental rights—chronic substance abuse, out-of-home placement for six months, and prior termination of parental rights. It also found that Mother's continued custody of D.W. would likely cause D.W. serious emotional or physical damage and that termination was in his best interests. Finally, the juvenile court found that the Department had made active efforts to prevent the breakup of the family. It therefore terminated Mother's parental rights. Mother timely appealed, and this court has jurisdiction. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 8–235(A), 12–120.21(A)(1), –2101(A)(1).

## DISCUSSION

**¶9**          Mother argues that the Department did not prove by clear and convincing evidence that it made "active efforts" to prevent the breakup of the family under ICWA. Although Mother did not raise this objection in the juvenile court, *Shawanee S. v. Ariz. Dep't. of Econ. Sec.*, 234 Ariz. 174, 178–79 ¶¶ 16–18 (App. 2014), in the exercise of our discretion, we nevertheless address her argument, *Clemens v. Clark*, 101 Ariz. 413, 414 (1966).

**¶10**          Our supreme court has directed us to "affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478 ¶ 29 (2023) (internal quotation marks and citation omitted). This court's review is conducted using a two-part analysis. *Id.* at ¶ 30. First, this court "review[s] the factual findings made by the juvenile court, and its factual findings will be accepted if reasonable evidence and inferences support them." *Id.* (internal quotation marks and citation omitted). Such deference is warranted because the juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004). Second, this court assesses "the juvenile court's legal conclusions regarding the statutory ground for termination—which must be established by 'clear and convincing' evidence at the juvenile court level" and will affirm unless these conclusions are clearly erroneous. *Brionna J.*, 255 Ariz. at 478–79 ¶ 31. "In making this determination, the question of whether the statutory factor is supported by the mandated quantum of evidence will not be disturbed unless [we] determine[] as a matter of law that no one could reasonably find the evidence to" constitute the applicable quantum. *Id.* at 479 ¶ 31.

¶11        To terminate parental rights, the juvenile court must find at least one statutory ground under A.R.S. § 8–533 by clear and convincing evidence and must find that termination is in the child's best interests by a preponderance of the evidence. A.R.S. § 8–537(B); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). ICWA applies when an Indian child is the subject of a termination. *See Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 419 ¶ 20 (App. 2011). Before terminating parental rights under ICWA, the Department must prove (1) beyond a reasonable doubt that the "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child," Ariz. R.P. Juv. Ct. 353(d)(1); 25 U.S.C. § 1912(f); and (2) by clear and convincing evidence that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts have proven unsuccessful," 25 U.S.C. § 1912(d); *Yvonne L.*, 227 Ariz. at 420 ¶ 20.

¶12        "Active efforts" means "affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family." 25 C.F.R. § 23.2. The parents must be assisted "through the steps of a case plan and with accessing or developing the resources necessary to satisfy the case plan." *Id.* Active efforts "should be conducted in partnership with the Indian child and the Indian child's parents . . . and Tribe." *Id.* They should be "tailored to the facts and circumstances of the case." *Id.* "[A]ctive efforts demand more than merely drawing up a reunification plan and leaving the parent to use his or her own resources to bring it to fruition." *Yvonne L.*, 227 Ariz. at 423 ¶ 34 n.17 (cleaned up). But "neither ICWA nor Arizona law mandates that [the Department] provide every imaginable service or program designed to prevent the breakup of the Indian family before the court may find that 'active efforts' took place." *Id.* at 423 ¶ 34. Further, the Department cannot force parents to engage in services but must provide them with the "necessary 'time and opportunity to participate in programs designed to help [them] become' effective parents." *Id.* (quoting *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994)).

¶13        Relevant examples of active efforts include (1) identifying appropriate services and assisting parents to obtain those services; (2) inviting representatives of the child's Tribe to provide the family with support and services; (3) implementing "all available and culturally appropriate family preservation strategies and facilitating the use of remedial and rehabilitative services provided by the child's Tribe"; (4) supporting visitation with parents "in the most natural setting possible"; (5) identifying community resources and assisting the parents in accessing

them; (6) "[m]onitoring progress and participation in services"; and (7) considering alternative methods of addressing the parents' needs where services are unavailable. 25 C.F.R. § 23.2.

¶14 Here, reasonable evidence supports the juvenile court's finding that the Department made active efforts to provide remedial services and rehabilitative programs to prevent the family breakup. The Department offered Mother parenting sessions, which she successfully completed. It also offered her substance-abuse testing, and substance-abuse assessment and treatment. It referred her for substance-abuse treatment twice. The Department offered Mother visitation services, but she failed to engage and respond to the Department's attempts to schedule visits. The Department also provided Mother with the necessary time and opportunity to participate in these programs designed to help her become an effective parent. *See Yvonne L.*, 227 Ariz. at 423 ¶ 34. The Department actively tried to communicate with Mother through phone, email, and mail about the services, but these attempts failed. Finally, the termination would not separate D.W. from his cultural heritage because he was placed with his grandparent, who is willing to allow him to have contact with his relatives who are members of the Tribe.

¶15 Mother argues that the Department did not make active efforts because it failed to provide her inpatient treatment after the Program recommended that she participate in one. But the record shows that the Department did offer her inpatient treatment, and she declined. Moreover, she did not respond to the Department's other communications. The Department was not required to force her to engage in the offered services. *Id.* Finally, Mother's argument that the court's findings that each element of its termination order was not supported by the appropriate quantum of evidence is likewise unavailing. Given this record, we hold, as a matter of law, that it was reasonable to conclude that the evidence adduced at trial was sufficient to its purposes. *Brionna J.*, 255 Ariz. at 479 ¶ 31. Mother has thus shown no error.

**CONCLUSION**

¶16 We affirm.

